# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL HOWARD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> DYNAMIC RECOVERY SOLUTIONS LLC, <br><br> Defendant. | Case No.: 20-cv-1085 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed collection efforts into the District.

## PARTIES

3. Plaintiff Carol Howard is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Dynamic Recovery Solutions, LLC ("DRS") is a debt collection agency with its principal offices located at 135 Interstate Boulevard, Suite 6, Greenville, South Carolina 29615.

6. DRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. DRS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. DRS is a debt collector as defined in 15 U.S.C. § 1692a.

### FACTS

9. On or about April 8, 2020, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Second Round Sub, LLC." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was a consumer credit account used only for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. The payment remittance slip in Exhibit A includes the following mark immediately below Defendant's name and address:



14. The above symbol is a trademark of ACA International ("ACA"), a trade group in the United States that represents collection agencies, creditors, debt buyers, collection attorneys, and debt collection service providers.

15. The ACA trademark in Exhibit A is an affirmative representation that Defendant was a member of ACA when it mailed Exhibit A.

16. Consumers throughout the country are familiar with the ACA as it is the largest trade group in the collection industry, and the ACA's mark impairs a sense of legitimacy to the collection effort.

17. The ACA provides updates to collection agencies through seminars and literature to ACA's members that address compliance and regulatory matters and trends in the law.

18. The ACA has a Member Code of Conduct, to which ACA members must agree to adhere. *See,* ACA International, Code of Conduct (adopted September 28, 2016) (available at: https://www.acainternational.org/assets/code-of-conduct/2016-code-of-conduct.pdf) (accessed: June 18, 2020).

19. Canon III of the ACA Code of Conduct ("Canon III") provides strict rules for ACA's members in dealing with consumers.

20. For example, Canon III requires that ACA's members go beyond mere compliance with the law to avoid unnecessary confusion, including by "providing an amount, type, or frequency of information which is not required by law in order to facilitate understanding and dispel misinformation."

21. Canon III also requires that collection agencies appropriately tailor employee incentives and individual discipline relating to compliance.

22. Canon III also requires ACA members establish and maintain policies and processes to prevent disclosure of personal sensitive or confidential information, and take corrective action in cases of improper disclosure.

23. Canon III also requires ACA members implement risk management and supervisory measures to ensure consumer account data is accurate and that the debts the ACA member is collecting are legitimate and owed by the consumer.

24. To become an ACA member, a company must agree to abide by ACA's code of conduct, provide a letter of good standing issued by the company's secretary of state, and adhere to all federal and state laws and licensing requirements.

25. Upon information and belief, Defendant is not, in fact, a member of ACA.

26. A search of the Member Directory on ACA's website did not return an entry for Defendant as a member.

27. A false statement about a debt collector's affiliation with a trade group like ACA is a material false statement.

28. Plaintiff was confused and misled by Exhibit A.

29. The unsophisticated consumer would be confused and misled by Exhibit A.

### The FDCPA

30. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3

4

(E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge

to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

31. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

32. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring purported settlement offers, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA*

*Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

33. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

34. 15 U.S.C. § 1692e(1) specifically prohibits the false representation that "the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

35. 15 U.S.C. § 1692e(2) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

36. 15 U.S.C. § 1692e(9) specifically prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

37. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

38. 15 U.S.C. § 1692g states, part:

(a) Notice of debt; contents

Within five days after the initial communication with the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

7

> . . .
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) . . . that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . until the debt collector obtains . . . the name and address of the original creditor, and a copy of such . . . name and address of the original creditor, is mailed to the consumer by the debt collector.
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to . . . request the name and address of the original creditor.

## COUNT I – FDCPA

39. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

40. <u>Exhibit A</u> falsely states that Alpha is a member of ACA International.

41. Defendant violated 15 U.S.C. §§ 1692e, 1692e(9), and 1692e(10).

## CLASS ALLEGATIONS

42. Plaintiff brings this action on behalf a Class consisting of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) containing the ACA International "Member" mark, (d) seeking to collect a debt for personal, family or household purposes, (e) where the letter was mailed between July 16, 2019, and July 16, 2020 (f) and was not returned by the postal service.

43. Plaintiff also brings this action on behalf of the following subclass:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Defendant, (c) containing the ACA International "Member" mark, (d) seeking to collect a debt for personal, family or household purposes, (e) where the letter was mailed between July 16, 2019, and July 16, 2020, and (f) and was not returned by the postal service.

44. The Class and Subclass are each so numerous that joinder is impracticable.

45. Upon information and belief, there are more than 50 members of the Class and Subclass.

46. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA.

47. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

48. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

49. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

50. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 16, 2020.

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com